UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY STOKES,<br><br>        Plaintiff(s),<br><br>v.<br><br>INTERLINE BRANDS INC,<br><br>        Defendant(s).<br>_____/ | No. C-12-05527 JSW (DMR)<br><br>**ORDER RE JOINT DISCOVERY LETTERS [DOCKET NOS. 47, 48, 49]** |

Before the court are three discovery letter briefs filed by Plaintiff Cory Stokes ("Plaintiff") and Defendant Interline Brands Inc. ("Defendant"). In the first letter, Plaintiff seeks a protective order regarding 1059 requests for admission ("RFAs") propounded by Defendant. [Docket No. 47.] In the second letter, Defendant challenges the sufficiency of Plaintiff's responses to seven of Defendant's interrogatories and requests for production of documents ("RFPs"). [Docket No. 48.] The third letter disputes the sufficiency of Plaintiff's initial disclosures pursuant to Federal Rule of Civil Procedure 26. [Docket No. 49.] The court finds that these matters are appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b).

For the reasons stated below, the court grants Plaintiff's motion for a protective order and grants in part and denies in part Defendant's motions to compel.

**I. BACKGROUND**

On August 15, 2012, Plaintiff filed a class action complaint in the Superior Court for the County of San Francisco against his former employers Defendant and CSE Holdings, Inc.[1] On September 26, 2012, Plaintiff filed a First Amended Complaint ("FAC"). [Docket No. 1, Ex. E.] On October 26, 2012, Defendant and CSE Holdings, Inc. removed to this court.

Plaintiff worked for Defendant as an account manager and was paid on a commission basis. Sept. 27 Letter [Docket No. 48] at 2-3. To perform his job, Plaintiff drove his personal car to client locations to sell and deliver various products. *Id.* In the FAC, Plaintiff claims that Defendant (1) failed to properly reimburse actual car mileage and cell phone expenses by capping maximum reimbursement at a dollar amount rather than reimbursing him for actual usage, (2) improperly deducted a percentage of sales commissions from wages if customers paid with credit cards, and (3) failed to timely provide accurate wage statements. FAC at ¶¶ 6, 8, 13-15. Plaintiff also alleges that these failures were systematic practices and policies that Defendant applied to "a class of persons employed by Defendant in California as account managers between the four years preceding the filing of the action and the present." *Id.* at ¶¶ 10, 12. The FAC alleges violations of California Labor Code § 2802 and California Bus. & Prof. Code § 17200 et seq., and seeks recovery of civil penalties under the California Labor Code Private Attorneys General Act. *Id.* at ¶¶ 16-27.

## II. DISCUSSION

### A. Defendant's Requests for Admissions

Plaintiff moves for a protective order to relieve him from the burden of responding to 1059 requests for admissions served by Defendant on August 30, 2013.

A party may serve on any other party a written request to admit the truth of any nonprivileged matter that is relevant to any party's claim or defense relating to (1) facts, (2) the application of law to fact, or opinions about either, or (3) the genuineness of any described documents. Fed. R. Civ. P. 36(a); *see also* Fed. R. Civ. P. 26(b)(1). However, the "court may, for good cause, issue an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The

---

[1] CSE Holdings, Inc. was erroneously sued as "CleanSource, Inc.", and was subsequently dismissed from this action. *See* Docket No. 28.

motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." The court may forbid or limit the disclosure or discovery. Fed. R. Civ. P. 26(c)(1)(A)-(H).

The Ninth Circuit has recognized that requests for admissions "are sought, first, to facilitate proof with respect to issues that cannot be determined from the case, and second, to narrow the issues by eliminating those that can be." *Conlon v. United States,* 474 F.3d 616, 622 (9th Cir. 2007). Rule 36(a) "seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice." *Id.* The goal of requests for admissions is to "eliminate from the trial matters as to which there is no genuine dispute." *Scott v. Keller*, No. 07-CV-00184-KJD-PA, 2010 WL 1267772 at *1 (E.D. Cal. Mar. 31, 2010) (quoting *People of the State of California v. The Jules Fribourg,* 19 F.R.D. 432, 436 (N.D. Cal. 1955)). For this reason, "requests for admissions are not principally discovery devices." *Safeco of America v. Rawstron,* 181 F.R.D. 441, 445 (C.D. Cal. 1998). "The rule is not to be used in an effort to harass the other side or in the hope that a party's adversary will simply concede essential elements." *Id.* (citation omitted). *See also Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1268 (11th Cir. 2002) ("[W]hen a party uses the rule to establish uncontested facts and to narrow the issues for trial, then the rule functions properly. When a party . . . however, uses the rule to harass the other side or, as in this case, with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements (that the party has already denied in its answer), the rule's time-saving function ceases; the rule instead becomes a weapon, dragging out the litigation and wasting valuable resources.").

Some of the requests for admission are inappropriate for the specific reasons Plaintiff raise. For example, several of the requests ask Plaintiff to admit that the law does not require Defendant to reimburse Plaintiff for certain expenses—this is the dispute at the heart of this lawsuit and is not an inappropriate subject for a request for admission. *See* RFA Nos. 1048-1059; *Perez*, 297 F.3d at 1269 ("Issues obviously subject to dispute should be resolved at trial, not in a discovery motion [to compel a response to an RFA]."); *Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050, 1057 (S.D. Cal. 1999) ("Requests for admissions cannot be used to compel an admission of a conclusion

of law."); Fed. R. Civ. P. 36, Advisory Committee Notes to the 1970 Amendment ("Requests for admission involving the application of law to fact may create disputes between the parties which are best resolved in the presence of the judge after much or all of the other discovery has been completed."). Other requests seek information that has no apparent bearing on any claim or defense asserted. *See, e.g.* RFA No. 52 ("Admit that YOU signed DEFENDANT'S Substance Abuse Policy Acknowledgment of Receipt . . . .").

In the interest of judicial economy, this court declines to determine the propriety of each of Defendant's 1059 requests for admission in the 162-page submission. Rather, the court finds that the sheer volume of the requests for admission is unduly burdensome and oppressive. This case is straightforward; Plaintiff asserts only three state law causes of action based on Defendant's reimbursement, wage deduction, and wage statement practices. This is not the type of complex lawsuit that warrants voluminous discovery of the type propounded by Defendant. *Compare Wigler v. Elec. Data Sys. Corp.*, 108 F.R.D. 204, 205 (D. Md. 1985) (1,664 requests for admissions served by former employer on former employee who brought employment discrimination action were oppressive, considering that case was not complex, involving a single plaintiff and posing issues which were customary in employment discrimination actions) *with U.S. ex rel. Minge v. TECT Aerospace, Inc.*, No. 07-1212-MLB, 2012 WL 1631678 at *5 (D. Kan. May 8, 2012) (2826 total requests for admissions to four defendants was not excessive, where "[t]he parties are painfully aware that this case is very complicated and fact intensive," requiring an initial phase of limited discovery) and *Sequa Corp. v. Gelmin*, No. 91-CV-8675-CSH, 1993 WL 350029 at *1 (S.D.N.Y. Sept. 7, 1993) (denying motion for protective order relieving defendants of obligation of responding to approximately 90% of plaintiff's 1441 requests where the "bulk of the requests seek simply a confirmation that specified copies of checks or bank statements produced by defendants are true copies and accurately reflect the transactions that they report"). Defendant argues that the number of requests is justified because this case is a putative class action that could involve "almost 100 individuals," but the nature of the claims are not made more complicated by virtue of the class allegations. Furthermore, the RFAs at issue are all targeted to Plaintiff rather than to discovering information about the putative class. The *Wigler* court put it best: "A closer look reveals that the

defendant's requests represent an attempt not just to nail down the core facts of the case, but also to pick every nit that a squad of lawyers could possibly see in it." 108 F.R.D. at 205.

Accordingly, Plaintiff's motion for a protective order is granted in part. A number of the RFAs specifically request that Plaintiff admit the genuineness of documents. *See, e.g.* RFA No. 47 ("Admit that the document DEFENDANT produced, furnished and/or made available to YOU in this action which is numbered IBI 000025 through IBI 000026 is genuine."). *See also* Fed. R. Civ. P. 36(a) (permitting a party to serve a request to admit the "genuineness of any described documents"). Within two weeks of this order, Plaintiff shall answer any RFAs that specifically ask whether a document is genuine.

Other than the RFAs addressing the genuineness of documents, Defendant may select only 25 RFAs to which Plaintiff must respond. Within one week of this order, Defendant shall serve those 25 RFAs on Plaintiff. Plaintiff shall respond within 30 days of Defendant's service of those RFAs.

**B. Plaintiff's Responses to Defendant's Interrogatories and Document Requests**

On April 8, 2013, Defendant propounded its first sets of interrogatories and requests for production of documents (RFPs). Plaintiff served initial responses on May 8, met and conferred with Defendant, served supplemental responses on August 30, met and conferred with Defendant again, and served second supplemental responses on September 20, 2013. The parties continue to dispute whether Plaintiff's responses to certain of these discovery requests are adequate.

**1. Interrogatory No. 3**

Interrogatory No. 3 requests that Plaintiff state "all facts that support, refute, or otherwise RELATE TO PLAINTIFF's claim that DEFENDANT failed to provide PLAINTIFF with accurate wage statements in a timely fashion."

In his original response and two supplemental responses, Plaintiff lists 37 wage statements between November 2010 and May 2012 in which Defendants took deductions that were not shown on the wage statement. Plaintiff also lists the type of deductions that Defendant made in each pay period covered by the 37 wage statements (e.g., deductions for credit card payments). Plaintiff argues that because Defendant took deductions from wages owed to Plaintiff, the wage statements

5

are not accurate. Plaintiff also notes that for this time period, the deductions taken by Defendant appear to total $677.04, and that Plaintiff could not identify the deductions taken in the relevant time period prior to November 2010 because Defendant has not produced records for the 2008 to 2010 time period.

Defendant contends this response is inadequate because "Plaintiff fails to set forth the dollar amount of each type of deduction that he claims Defendant should have but failed to itemize in his wage statements." According to Plaintiff, the specific amounts of the deductions improperly taken from Plaintiff's wages are listed on commission statements that Defendant prepared and gave to account managers each pay period, under a section titled "Deductions." Thus, Defendant is essentially asking Plaintiff to restate the information that is *already in Defendant's own records*, in the obvious location that Plaintiff has identified. This is not Plaintiff's burden to bear. Plaintiff has sufficiently responded to Interrogatory No. 3, and Defendant's motion to compel a further response is denied.

### 2. Interrogatory No. 5

Interrogatory No. 5 requests that Plaintiff state "all facts that support, refute, or otherwise RELATE TO PLAINTIFF's claim that DEFENDANT made unlawful deducations from PLAINTIFF'S wages including calculations of all such unlawful deductions."

Defendant's argument regarding Interrogatory No. 5 is identical to its argument on Interrogatory No. 3—namely, that Plaintiff fails to set forth the amount of each type of deduction he contends was made from each of the 37 wage statements referenced in his response. For the same reason as above, Defendant's motion to compel a further response to Interrogatory No. 5 is denied.

### 3. Interrogatory No. 7

Interrogatory No. 7 requests that Plaintiff state "all facts that support, refute, or otherwise RELATE TO PLAINTIFF's claim that DEFENDANT owes PLAINTIFF civil penalties in this action, including calculation of all such penalties owed."

Plaintiff's response identifies the statutes giving rise to penalties to which Plaintiff believes he is entitled. Those statutes enumerate the amount of the civil penalty for violations of the California Labor Code. *See* Cal. Labor Code § 226.3 (authorizing civil penalty for failing to provide

the employee a wage deduction statement of $250 per employee per violation in an initial citation and $1,000 per employee for each subsequent citation); Cal. Labor Code § 2699 (civil penalty for violation of Labor Code is $100-$500, depending on number of employees employed by defendant at time of alleged violation and whether violation is an initial or subsequent violation). Plaintiff's response also states the number of alleged violations and when they occurred, and that Plaintiff calculated the total amount of civil penalties by taking the statutory civil penalty rate and multiplying that rate by the number of applicable pay periods during the appropriate time period, arriving at a penalty total of $9,900.

Defendant contends these responses are inadequate because they fail to identify the amount of the penalty authorized by the statutes, the applicable Labor Code sections referenced in his response, and the number of applicable pay periods. As to the first and second concerns, the amount of the penalties authorized by the statutes are stated in the statutes themselves, and Plaintiff's responses list the statutes upon which he relies. The FAC further enumerates the violations of the California Labor Code that Plaintiff contends give rise to civil penalties under the Private Attorneys General Act. *See* FAC at ¶ 25. Plaintiff's responses also list the 37 pay periods in which he contends Defendant violated the Labor Code. Plaintiff has therefore sufficiently responded to Interrogatory No. 7.

**4. Interrogatory Nos. 9 and 10**

Interrogatory No. 9 requests that Plaintiff state "the nature and amount of all monetary relief PLAINTIFF claims is owed to PLAINTIFF by DEFENDANT." In response, Plaintiff describes how he calculated each category of monetary relief: (1) reimbursement for use of his personal vehicle, (2) reimbursement for use of a cell phone; (3) reimbursement for improper deductions from Plaintiff's wage statements; (4) penalties for Defendant's violations of the California Labor Code, and (5) attorneys' fees as determined by the court.[2] Interrogatory No. 10 requests that Plaintiff state "how all monetary relief PLAINTIFF claims is owed to PLAINTIFF by DEFENDANT is calculated."

---

[2] With respect to (3) and (4), Defendant raises the same arguments as it did regarding Interrogatory Nos. 3, 5, and 7, and for the same reasons stated above, the court rejects those arguments. Defendant has raised no objection to (5) at this time.

7

United States District Court
For the Northern District of California

### a. Reimbursement for Usage of Personal Vehicle

Plaintiff's response states that during his employment, he drove, on average, 36,000 to 40,000 miles per year for his job. Defendant's reimbursement policy provided that Plaintiff received reimbursement based on sales made, not actual miles driven or expenses incurred. During the time in question, Defendant reimbursed Plaintiff at the rate of $350 per month for all expenses incurred, with $50 allocated to phone expenses, $50 to customer entertainment expenses, and the remaining $250 to reimbursement for miles driven in Plaintiff's personal cars. Plaintiff's interrogatory response further states that Plaintiff should have been reimbursed for actual miles driven, and calculates that reimbursement using a $.55 per mile reimbursement rate (which is the reimbursement rate used by the IRS for federal income tax purposes) and estimating 38,000 miles per year driven.

Defendant argues that Plaintiff's response is inadequate because it fails to state the expenses Plaintiff incurred for fuel, maintenance, repairs, depreciation, and automobile insurance for the vehicle Plaintiff used on the job. This argument misses the point. Plaintiff's claim is that Defendant's lump-sum method of compensating him for the use of his car for job-related purposes was insufficient. The method he uses to demonstrate the insufficiency of the lump-sum payment is to compare that payment to what Plaintiff might have received if Defendant had used a reasonable mileage-based reimbursement calculation, such as that used by the IRS for tax purposes, which approximates the per-mile cost of owning and operating a car. Plaintiff need not compare the lump-sum payment to the *actual expenses* he incurred using the car. *See Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 571, 169 P.3d 889, 899 (2007) ("[A]n employee must be permitted to challenge the amount of a lump-sum payment as being insufficient under [California Labor Code] section 2802. An employee may do so by comparing the payment with the amount that would be payable under either the actual expense method or the mileage reimbursement method. If the comparison reveals that the lump sum is inadequate, the employer must make up the difference."). Plaintiff's response to Interrogatory No. 9 and 10 is therefore sufficient with respect to monetary claims due to Defendant's alleged failure to properly reimburse Plaintiff for the use of his car.

### b. Reimbursement for Usage of Cell Phone

8

Plaintiff's response states that he incurred a basic charge of $100 per month for the use of the cell phone that he used on the job. Because Defendant only reimbursed him $50 per month for the use of that phone, Plaintiff seeks to recover the $50 per month difference between the amount he paid and the amount he was reimbursed.

Defendant argues that Plaintiff fails to state what percentage or actual dollar amount of his phone charges that he allocates to employment-related use. The court agrees. Within one week of the date of this order, Plaintiff shall supplement his responses to Interrogatory Nos. 9 and 10 to explain whether Plaintiff used the phone for which he seeks reimbursement for both business and personal use or business use alone. If the former, Plaintiff shall also provide details regarding the amount of the phone charges for which he seeks reimbursement of business expenses.

**5. Interrogatory Nos. 12 and 14**

Interrogatory No. 12 requests that Plaintiff state "all facts that support, refute, or otherwise RELATE TO PLAINTIFF's claim that DEFENDANT implemented systematic policies, acts, and practices that violated the provisions of the California Labor Code as alleged in the COMPLAINT." Interrogatory No. 14 requests that Plaintiff state "all facts that support, refute, or otherwise RELATE TO PLAINTIFF'S claim that DEFENDANT implemented systematic practice of unlawfully deducting amounts from PLAINTIFF's wages as alleged in the COMPLAINT."

Plaintiff's response describes policies established in Defendant's Commission Programs and expressed on Defendant's commission statements provided to all account managers whereby Plaintiff was reimbursed for expenses based on sales rather than actual expenses incurred, and Defendant took deductions from wages owed to Plaintiff and those similarly situated.

Defendant argues that Plaintiff's responses are incomplete because they fail to set forth facts that indicate these policies were implemented on a *systemic* basis, i.e., the names, dates, or contents of any specific policies implemented on a uniform or company-wide basis. Defendant again misses the point. Plaintiff need not allege that an official rule-making entity in the company drafted a policy and then embossed it with Defendant's imprimatur. It is enough, for purposes of responding to this discovery request, that Plaintiff states that Defendant had a consistent practice of reimbursing

1 Plaintiff on a lump-sum basis during each pay period and deducting the same categories of
2 deductions from each wage statement.

3 Defendant also argues that Plaintiff should have identified the names of any other employees
4 that he claims were subjected to the same policies. This is an especially curious argument given that
5 Defendant resisted responding to Plaintiff's discovery requests seeking contact information for
6 putative class members. *See* Order dated August 8, 2013 [Docket No. 38] at 3-5. Plaintiff's
7 interrogatory response states that the policies and practices at issue applied to all account managers;
8 furthermore, the FAC defines the putative class as "a class of persons employed by Defendant in
9 California as account managers between the four years preceding the filing of the action and the
10 present." FAC at ¶¶ 10, 12. Plaintiff's response to Interrogatory Nos. 12 and 14 is therefore
11 sufficient.

### 6. Verification of Interrogatory Responses

Defendant contends that Plaintiff failed to properly verify his initial interrogatory responses because the verification states: "I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct." Defendant complains that the verification is under "the laws of the State of California" rather than federal law. This position elevates form over substance and is completely without merit. The federal rules require each interrogatory to be answered "under oath" and signed. Fed. R. Civ. P. 33(b)(3), 33(b)(5). Nothing in the rules requires this oath to take a particular form. *See also* 28 U.S.C. § 1746 (stating that wherever a federal law requires a verification, the requirement may be satisfied by a "writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form . . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.'"). Defendant's motion to compel supplemental verifications is denied.

### 7. RFPs

In some of Plaintiff's responses to Defendant's RFPs, Plaintiff states that "to the extent responsive documents exist," he will "produce responsive, non-privileged documents in his possession, custody, and control." Defendant objects that "the response is ambiguous as to what is agreed and does not state with any specificity the item or category of documents that will be

10

produced," and "Plaintiff's responses indicate that Plaintiff 'will produce' responsive documents, but does not indicate whether he intends to produce additional documents beyond those that he produced in his written responses."

The parties did not attach Plaintiff's responses to Defendant's RFPs, so the court is unable to evaluate the above language in the context of the complete responses. The court notes that Defendant does not raise any other objections to the sufficiency of Plaintiff's RFP responses nor argue that the disputed language represents the totality of any of Plaintiff's RFP responses. For the sake of clarity, within one week of the date of this order, Plaintiff shall send defense counsel a letter stating, for each of the requests, whether Plaintiff has responsive, non-privileged documents in his possession, custody, or control, and whether those documents have been produced.

### C. Plaintiff's Initial Disclosures

#### 1. Initial Disclosures Relating to Damages

On July 15, 2013, Plaintiff served Defendant with his initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1). Defendant moves to compel Plaintiff to supplement his initial disclosures because Defendant claims they inadequately provide a computation of each category of Plaintiff's claimed damages, i.e. (1) reimbursement for use of his personal vehicle, (2) reimbursement for use of a cell phone; (3) reimbursement for improper deductions from Plaintiff's wage statements; and (4) penalties for Defendant's violations of the California Labor Code.

Plaintiff's initial damages disclosure under Rule 26(a) is a preliminary assessment and is subject to revision. If discovery reveals additional information, Plaintiff must "provide more detailed disclosure of [his] calculations *either* by way of Rule 26 disclosure *or* through interrogatory responses." *City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (emphasis added). The federal rules do not require Plaintiff to supplement his initial disclosures if he has conveyed the new information to Defendant in another discovery response. *See* Fed. R. Civ. P. 26(e)(1) (A party who has made a disclosure under Rule 26(a) must supplement or correct its initial disclosure "if the additional or corrective information *has not otherwise been made known* to the other parties during the discovery process or in writing.") (emphasis added). With respect to the alleged deficiencies in Plaintiff's initial disclosures, Defendant rehashes the same arguments it presented in challenging Plaintiff's responses to Defendant's interrogatories, which the

court has addressed above. Therefore, the court denies Defendant's motion to compel supplemental responses to Plaintiff's initial disclosures.

### 2. Identification of Witnesses

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Defendant complains that Plaintiff's initial disclosures fail to comply with this rule because they fail to disclose any other members of the putative class and individuals in Defendant's management who have knowledge of Defendant's policies and procedures.

With respect to the identities of the other account managers in the putative class, the court notes again that Defendant refused to disclose the names and contact information of putative class members until this court ordered it to. Plaintiff received the names and addresses of the other account managers on September 3, 2013. Defendant's motion essentially asks the court to compel Plaintiff to supplement his initial disclosures to reflect information Defendant only recently, and reluctantly, produced to Plaintiff. Plaintiff shall supplement his witness disclosure to provide information regarding putative class members within one week of this order.

With respect to individuals in Defendant's management with knowledge of facts pertaining to the claims, the court notes that Defendant has been slow in disclosing relevant management personnel to Plaintiff. Plaintiff avers that Defendant did not provide Plaintiff with initial disclosures until September 13, 2013, despite numerous requests that Defendant do so. Those disclosures apparently identified a number of individuals within its management and offered the vague description that these individuals "potentially [have] knowledge of the facts related to the claims being asserted by Plaintiff individually and putatively on behalf of the putative class he seeks to represent, and Defendant's defenses thereto."[3] Plaintiff has propounded further discovery to understand the nature of the information those identified might possess. Because discovery into this matter is ongoing, the court denies Defendant's motion to compel Plaintiff's to supplement his initial

---

[3] The parties did not submit Defendant's initial disclosures.

12

responses regarding the names and contact information for relevant individuals in Defendant's management.

## IV. CONCLUSION

For the reasons stated above, the court grants Plaintiff's motion for a protective order and grants in part and denies in part Defendant's motions to compel.

IT IS SO ORDERED.

Dated: November 14, 2013

DONNA M. RYU
United States Magistrate Judge