United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CORY STOKES,

        Plaintiff,

    v.

INTERLINE BRANDS INC,

        Defendant.
_____/

No. C-12-05527 JSW (DMR)

**ORDER RE: JOINT DISCOVERY LETTER [DOCKET NO. 66]**

Before the court is a discovery letter brief filed by Plaintiff Cory Stokes ("Plaintiff") and Defendant Interline Brands Inc. ("Defendant"). [Docket No. 66 (Letter).] In the letter, Plaintiff seeks to compel Defendant to respond to one inspection demand and two interrogatories. A hearing was held on the letter on December 18, 2013. For the reasons stated below and at the hearing, Plaintiff's motion to compel is granted.

**I. BACKGROUND**

On August 15, 2012, Plaintiff filed a class action complaint in the Superior Court for the County of San Francisco against his former employers Defendant and CSE Holdings, Inc.[1] On September 26, 2012, Plaintiff filed a First Amended Complaint ("FAC"). [Docket No. 1, Ex. E.] On October 26, 2012, Defendant and CSE Holdings, Inc. removed to this court.

---

[1] CSE Holdings, Inc. was erroneously sued as "CleanSource, Inc.", and was subsequently dismissed from this action. *See* Docket No. 28.

Plaintiff worked for Defendant as an account manager and was paid on a commission basis. (Letter 1-2.) To perform his job, Plaintiff drove his personal car to client locations to sell and deliver various products. *Id.* In the FAC, Plaintiff claims that Defendant (1) failed to properly reimburse actual car mileage and cell phone expenses by capping maximum reimbursement at a dollar amount rather than reimbursing him for actual usage, (2) improperly took deductions from account managers' commissions for Defendant's costs of doing business, including by deducting a percentage of sales commissions from wages if customers paid with credit cards, and (3) failed to timely provide accurate wage statements. (FAC ¶¶ 6, 8, 13-15.) Plaintiff also alleges that these failures were systemic practices and policies that Defendant applied to "a class of persons employed by Defendant in California as account managers between the four years preceding the filing of the action and the present." (FAC ¶¶ 10, 12.) The FAC alleges violations of California Labor Code § 2802 and California Bus. & Prof. Code § 17200 *et seq.*, and seeks recovery of civil penalties under the California Labor Code Private Attorneys General Act. (FAC ¶¶ 16-27.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "[T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).

## III. DISCUSSION

**A. Plaintiff's Inspection Demand No. 25**

Plaintiff's Inspection Demand No. 25 seeks the following information:

> **ALL** commission statement **DOCUMENTS** reflecting or depicting deductions taken from the wages of the account managers identified in Defendant Interline Brands, Inc.'s

2

Supplemental Responses to Plaintiff's First Set of Interrogatories, Response to Interrogatory No. 3, between August 15, 2008, and the present.

Defendant offers several reasons for resisting the production of this discovery.

### 1. Relevance

Defendant argues that the documents are not relevant, and are also cumulative of other discovery relating to class certification. Documents showing that putative class members had deductions taken from their wages in the same manner that Plaintiff alleges deductions were taken from his wages are relevant to the commonality requirement for class certification. *See* Fed. R. Civ. P. 23(a) (class certification requires "questions of law or fact common to the class"). That Plaintiff has some information supporting class certification does not mean that he should be prevented from acquiring additional discovery on Rule 23 issues.

### 2. Definition of "Deduction"

Defendant contends that the requested commission statements "do not exist." Defendant's argument is not that Defendant does not possess commission statements for the relevant account managers during the putative class period, but rather that those commission statements do not "depict[] deductions taken from the wages of account managers," when one uses Defendant's definition of "deductions." The gist of Defendant's position is that the amounts deducted from the account managers' commission statements were "charge-backs," and as such did not constitute improper "deductions" of wages.[2] Therefore, according to Defendant, it did not take any "deductions," so wage statements showing "deductions from wages" do not exist.

---

[2] *See Steinhebel v. Los Angeles Times Commc'ns*, 126 Cal. App. 4th 696, 700, 24 Cal. Rptr. 3d 351, 353 (2005). In *Steinhebel*, the defendant's sales employees received commissions for each newspaper subscription sold where the customer kept the subscription for at least 28 days. *Id.* at 700-702. The defendant advanced the commission to the employee two weeks before of the 28-day mark, but if the subscription was cancelled before the 28th day or otherwise failed, the employer would deduct the amount of that advanced commission from future commissions. *Id.* at 702. The court concluded that this "charge-back" policy did not violate the California Labor Code's prohibition on employers taking any part of an employee's wages because "[t]he essence of an advance is that at the time of payment the employer cannot determine whether the commission will eventually be earned because a condition to the employee's right to the commission has yet to occur or its occurrence as yet is otherwise unascertainable. An *advance*, therefore, by definition, is not a *wage* because all conditions for performance have not been satisfied." *Id.* at 705. Defendant argues that it paid its employees following a similar advance commission payment scheme.

3

There are several problems with this argument. First, the characterization of amounts as commissions, deductions, or charge-backs is a question of law and fact that this court is not empowered to determine. It is sufficient that the discovery sought is reasonably calculated to lead to admissible evidence that could assist a finder of fact in determining how to characterize the amounts paid to, advanced to, or withheld from Defendant's payments to its account managers.

Additionally, Defendant's own documents, including its commission statements, clearly refer to "deductions." For example, in the course of this litigation, Defendant produced a document entitled "Commission Program," showing an effective date of January 1, 2010. (*See* Workman Decl. in Supp. of Mot. to Strike, Nov. 25, 2013, Ex. F (Commission Program).) The Commission Program describes the "deductions" that Defendant takes from commissions owed. For example, under the subheading "Credit Card Charges and Cash Discounts," the document states: "Commissions associated with customers that pay with credit cards beyond net 7 days . . . will be assessed a *deduction* equivalent to 38% of the credit card cost . . . . This *deduction* will affect the commissions paid for the month of the transaction. The specific transaction and the amount of the *deduction* will be calculated and added to the applicable commission statement." (Commission Program at IBI001243 (emphasis added).) In addition, Plaintiff's commission statement from October 31, 2011 shows several line items for "Deductions," including sub-items for "Delinquent Accounts," "Discounts Taken," "Other Deductions," and "Credit Card Payment." (Workman Decl. Ex. H (Oct. 31, 2011 Stokes commission statement) at IBI001208.) Even if Defendant disputes the use of the word "deduction" as a legal term of art, Plaintiff's inspection demand can still reasonably be interpreted to seek documents containing what Defendant has itself referred to as "deductions."

### 3. Employee Privacy

Defendant objects to this discovery request on the basis of its employees' privacy. It suggests that Plaintiff reach out to the approximately 75 putative class members to seek authorization for Defendant to release their commission statements. Defendant also notes that nine of the putative class members have signed identical declarations indicating their awareness of this lawsuit and stating that they "do not want [their] employment-related information provided to any of

4

them unless [they] consent in writing." (*See* App. of Putative Class Member Decls. [Docket No. 52-2] and Supplement [Docket No. 54] Ex. 1-9 at ¶ 9.)

The court finds that Defendant's objections on the basis of employee privacy are without merit. Defendant offers no argument for why the production of the commission statements under the confidentiality protections of the parties' stipulated protective order (*see* Docket No. 43) are inadequate. Accordingly, any documents produced in response to this request may be subject to the protective order.

### 4. Pending Motion to Compel

Pending before Judge White is a motion to compel certain putative class members to engage in individual arbitrations rather than participate in this lawsuit. [Docket No. 59 (Mot. to Compel Arbitration).] Defendant apparently circulated a new employee policy via email on August 26, 2013 that would require employees to submit to binding individual arbitration to resolve covered disputes, including specifically this lawsuit. (Mot. to Compel 3-5.) Defendant claims that all but nine of the putative class members have signed the policy and so cannot be added to the class. (Mot. to Compel 1.)

Defendant argues that the commission statements for the putative class members who have signed the new policy should be "off-limits," presumably because the commission statements will become irrelevant should Judge White determine that those putative class members may only proceed via individual arbitration. That motion will not be heard until February 7, 2014. Defendant has offered no law to support its argument that discovery into an aspect of Plaintiff's case should be halted for two months because a defendant has advanced a novel strategy for narrowing or terminating some claims. While such an approach may be appropriate in some circumstances, that is not the case here, particularly where Defendant has not argued that production of the requested documents would be an undue burden.[3]

---

[3] At the hearing, Defendant's counsel averred that it stored commission statements dating back to at least November 1, 2010 in electronic form; that commission statements are issued monthly; and that there are approximately 75 putative class members. Based on these statements, the court finds that it would not be unduly burdensome to retrieve these documents for all putative class members for the class period.

1   The court grants Plaintiff's motion to compel responses to this demand.

**B.     Plaintiff's Interrogatory No. 5**

According to Plaintiff, Defendant reimbursed account managers for automobile and cell phone expenses through a lump sum payment based on sales as opposed to actual expenses incurred. (Letter 1; *see also* Commission Program at IBI001238 (listing designated reimbursement amounts based on the employee's sales volume).)[4] Defendant has taken the position that these designated reimbursement amounts were just minimum amounts, and that account managers could obtain reimbursement over and above this amount. (Letter 2-3.)

Plaintiff's Interrogatory No. 5 states, in relevant part:

> For each account manager who **YOU** identified in Defendant Interline Brands, Inc.'s Responses to Plaintiff's First Set of Interrogatories, Response to Interrogatory No. 3, state the amount of reimbursement or allowance for business related expenses **YOU** paid to the account manager each month for the period of August 15, 2008 to the present . . . .

Plaintiff persuasively argued that this information is relevant to show whether the lump sum reimbursement payment policy applied to all account managers, and whether, contrary to Defendant's assertions, the designated amounts are what Defendant actually paid account managers. This could help establish that there are questions of fact or law common to the class for purposes of class certification.

Defendant argues that its Rule 30(b)(6) witness has already testified about Defendant's reimbursement policy. But Plaintiff is not required to take Defendant at its word, particularly where the testimony of its witness contradicts its written policies, and where Plaintiff is contesting the 159 post-deposition corrections submitted by the deponent (*see* Docket 61 (Mot. to Strike)). Defendant also argues that the amount of the reimbursements alone cannot be used to demonstrate whether reimbursements in excess of the designated amounts were actually sought. In other words, it is possible that the reimbursement amounts track to the designated amounts simply because no account managers ever sought to be reimbursed. This objection is premature: Defendant may take issue with Plaintiff's interpretation of the data once Plaintiff has actually received and interpreted the data.

---

[4] According to Plaintiff, in July of 2013, Defendant changed its policies regarding reimbursement of automobile expenses and now reimburses account managers based on actual miles driven. (Letter 1.)

Defendant also raises the same objections regarding employee privacy and the motion to compel individual arbitration as discussed above, which the court rejects for the same reasons.

**C.     Plaintiff's Interrogatory No. 6**

Plaintiff's Interrogatory No. 6 states, in relevant part:

> For each account manager who **YOU** identified in Defendant Interline Brands, Inc.'s Responses to Plaintiff's First Set of Interrogatories, Response to Interrogatory No. 3, state the dollar amount of deductions **YOU** took from wages paid to the account manager each month for the period of August 15, 2008 to the present . . . .

At the hearing, Plaintiff withdrew this interrogatory as duplicative of the information Plaintiff will receive through response to Inspection Demand No. 25.

## IV.  CONCLUSION

Defendant shall produce responses to Inspection Demand No. 25 and Interrogatory No. 5, subject to the protective order, by **January 31, 2014.**

IT IS SO ORDERED.

Dated:  December 20, 2013



_____
DONNA M. RYU
United States Magistrate Judge

7