WORKMAN LAW FIRM, PC
Robin G. Workman (Bar #145810)
robin@workmanlawpc.com
Aviva N. Roller (Bar #245415)
aviva@workmanlawpc.com
177 Post Street, Suite 900
San Francisco, CA 94108
Telephone: (415) 782-3660
Facsimile: (415) 788-1028

*Attorneys for Plaintiff Cory Stokes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY STOKES, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>INTERLINE BRANDS, INC., and Does 1 through 50, inclusive,<br><br>    Defendants. | No. 3:12-CV-05527 JD<br><br>[San Francisco Superior Court Case No. CGC-12-523274]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER:**<br><br>  **a) GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT;**<br><br>  **b) APPROVING THE FORM AND MANNER OF NOTICE TO PROVIDE TO THE PROPOSED SETTLEMENT CLASS AND DIRECTING THAT A NEUTRAL THIRD PARTY GIVE SUCH NOTICE TO THE PROPOSED SETTLEMENT CLASS;**<br><br>  **c) APPROVING DAHL ADMINISTRATION, LLC, A NEUTRAL THIRD PARTY, AS CLAIMS ADMINISTRATOR;**<br><br>  **d) SETTING A HEARING FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND AWARD OF FEES AND COSTS TO CLASS COUNSEL**<br><br>**DATE:   June 18, 2014**<br>**TIME:   9:30 a.m.**<br>**CTRM:  11** |

# TABLE OF CONTENTS

**Page(s)**

NOTICE ........................................................................................................................................ I

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.      INTRODUCTION ............................................................................................................ 1

II.     NATURE OF THE CASE ................................................................................................ 1

        A.      The Allegations In This Case ............................................................................. 1

               1.     Expense Reimbursement ........................................................................ 1

               2.     Deductions .............................................................................................. 2

        B.      Procedural History ............................................................................................. 3

        C.      March 12, 2014, Mediation ............................................................................... 3

        D.      Terms of the Settlement .................................................................................... 4

III.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY APPROVAL ..................................................................................... 5

        A.      The Role Of The Court In Preliminary Approval Of A Class Action Settlement.......... 6

        B.      Factors For The Court To Consider In Granting Preliminary Approval ...................... 7

               1.     The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations............................................................... 7

               2.     The Proposed Settlement Is Within The Range Of Reasonableness And Has No Obvious Deficiencies............................................... 8

               3.     The Settlement Does Not Improperly Grant Preferential Treatment To The Class Representative or Segments Of The Class ................ 9

               4.     The Stage Of The Proceedings Is Sufficiently Advanced To Permit Preliminary Approval Of The Settlement ............................ 10

VI.    THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES ................... 11

        A.      Rule 23 of the Federal Rules of Civil Procedure Governs ............................. 11

        B.      The Numerosity Requirement Is Satisfied ...................................................... 12

        C.      Common Questions of Law and Fact Bind the Class ....................................... 12

        D.      The Claims of the Plaintiff Are Typical of the Class ...................................... 13

        E.      The Class Representative Has Fairly and Adequately Protected the Interests of the

Proposed Class ................................................................................................... 13

F.       The Settlement Satisfies the Additional Requirements of Rule 23 ............................. 14

         1.       The Predominance Requirement Is Met ........................................... 14

         2.       The Superiority Requirement Is Met ................................................ 14

VII.     THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE ............................. 15

VIII.    THE COURT SHOULD SET THE FOLLOWING SETTLEMENT
         ADMINISTRATION DEADLINES ........................................................................... 15

IX.      CONCLUSION ..................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Beck-Ellman v. Kaz USA, Inc.</u>,
 2013 U.S. Dist. LEXIS 60182 (S.D. Cal. Jan. 7, 2013)......................................................5, 6, 7

<u>Blackie v. Barrack</u>,
 524 F.2d 891 (9th Cir. 1975) ...................................................................................................14

<u>California Rural Legal Assistance, Inc. v. Legal Servs. Corp.</u>,
 917 F.2d 1171 (9th Cir. 1990) .................................................................................................13

<u>City of Detroit v. Grinnell Corp.</u>,
 495 F.2d 448 (2d Cir. 1974)........................................................................................................6

<u>Consolidated Rail Co. v. Town of Hyde Park</u>,
 47 F.3d 473 (2d Cir. 1995).......................................................................................................12

<u>Dalton v. Lee Publications, Inc.</u>,
 270 F.R.D. 555 (S.D. Cal. 2010) .............................................................................................12

<u>EEOC v. Kovacevich "5" Farms</u>,
 2007 U.S. Dist. LEXIS 32330 (E.D. Cal. April 18, 2007) ......................................................12

<u>Estrada v. FedEx Ground Package System, Inc.</u>,
 154 Cal. App. 4th 1 (2007) ......................................................................................................12

<u>Glass v. UBS Fin. Servs.</u>,
 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 27, 2007) ...................................................9, 10, 11

<u>Hanlon v. Chrysler Corp.</u>,
 150 F.3d 1011 (9th Cir. Cal. 1998)....................................................................9, 12, 13, 14

<u>Hopkins, et al. v. Stryker Sales Corp.</u>,
 2012 U.S. Dist. LEXIS 67101 (N.D. Cal. May 14, 2012) .......................................................12

<u>Ingram v. The Coca-Cola Co.</u>,
 200 F.R.D. 685 (N.D. Ga. 2001)..............................................................................................10

<u>Jordan v. County of Los Angeles</u>,
 669 F.2d 1311 (9th Cir. 1982) .................................................................................................12

<u>Kirkorian v. Borelli</u>,
 695 F. Supp. 446 (N.D. Cal. 1988) ............................................................................................6

Linney v. Cellular Alaska P'ship,
    151 F.3d 1234 (9th Cir. 1998) ...................................................................5

In re Mego Fin. Corp. Sec. Litig.,
    213 F.3d 454 (2000), explained ............................................................9, 11

Monterrubio v. Best Buy Stores,
    291 F.R.D. 443 (E.D. Cal. 2013) .........................................................12, 15

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950).................................................................................15

National Rural Telecoms. Coop. v. DirectTV, Inc., et al.,
    221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................6

Schultz v. Qualxserv, LLC,
    2012 U.S. Dist. LEXIS 58561 (S.D. Cal. Apr. 26, 2012) .........................12

Shames v. Hertz Corp.,
    2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012) ........................7, 9

Staton v. Boeing,
    327 F.3d 938 (9th Cir. 2003) ...............................................................6, 13

Stuart v. Radioshack Corp.,
    2009 U.S. Dist. LEXIS 12337 (N.D. Cal. Feb. 5, 2009) ..........................12

Valentino v. Carter-Wallace, Inc.,
    97 F.3d 1227 (9th Cir. 1996) ....................................................................15

Van Vranken v. Atlantic Richfield Co.,
    901 F. Supp. 294 (N.D. Cal. 1995) ...........................................................10

In re Wash. Public Power Supply System Sec. Litig.,
    720 F. Supp. 1379 (D. Ariz. 1989) .............................................................8

**Statutes**

Labor Code section 2699, et seq. ...................................................................3, 4

California Labor Code § 2802 ..................................................................2, 3, 9

California Business and Professions Code § 17200, et seq. ...............................3

Labor Code § 201-204, 221, 226, 1174, 2802 and 2699.5 ...............................3

Labor Code § 221, 226, 2698 et seq., and 2802.................................................3

Labor Code § 226.............................................................................................9

Labor Code § 226(a)(4) ............................................................................................. 2

**Other Authorities**

Federal Rules of Civil Procedure, Rule 23 ................................................................ 11, 14

Federal Rules of Civil Procedure, Rule 23(a) ........................................................ 11, 12, 13, 14

Federal Rules of Civil Procedure, Rule 23(b)(2) .......................................................... 11

Federal Rules of Civil Procedure, Rule 23(b)(3) ...................................................... 11, 14, 15

Federal Rules of Civil Procedure, Rule 23(c)(2)(B) ...................................................... 15

Federal Rules of Civil Procedure, Rule 23(e) ................................................................ 5

Federal Rules of Civil Procedure, Rule 30(b)(6) ............................................................ 4

2 H. Newberg & A. Conte, Newberg on Class Actions (4th Ed. 2002) at § 11.41 ................... 5, 6, 7

Manual for Complex Litigation, Fourth, § 21.632-21.635 (2013) ...................................... 5

Manual for Complex Litigation, Fourth § 21.662 at p. 555 ............................................. 5

**NOTICE**

TO EACH PARTY AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 18, 2014, at 9:30 a.m. before the Honorable James Donato in Courtroom 11 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA Plaintiff Cory Stokes will move and does hereby move for Preliminary Approval of the proposed Class Settlement in this case. This motion is unopposed and based on the Stipulation of Settlement filed herewith.

This motion will be based on this Notice, the Memorandum of Points and Authorities filed herewith, the Declaration of Robin G. Workman, the Declaration of Cory Stokes, and supporting exhibits filed herewith, the complete files and records in this action, and such other argument and documents as may be presented at the hearing on this Motion.

DATE: May 13, 2014                           WORKMAN LAW FIRM, PC

                                    By:    /s/ Robin G. Workman
                                           Robin G. Workman
                                           Attorneys for Plaintiff Cory Stokes

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Cory Stokes ("Plaintiff" or "Stokes") and Defendant Interline Brands, Inc. ("Defendant" or "IBI") reached a full and final settlement of the above-captioned action, that is embodied in the Stipulation of Settlement and Release Of Class Action Claims ("Settlement") filed concurrently with the Court.[1]  By this application, Plaintiff seeks preliminary approval of the Settlement from the Court and conditional certification of the settlement class.  Plaintiff also requests that the Court approve the class notice, related settlement administration documents, and class settlement administration deadlines, the appointment of Plaintiff Cory Stokes as class representative, Workman Law Firm, PC as class counsel, Dahl Administration, LLC ("Dahl") as the third party administrator, and the proposed hearing date for final approval and for Plaintiff's request for attorneys' fees and costs, and class representative incentive payment.

Plaintiff requests that the Court grant the motion because the terms of settlement presented meet the requirements for preliminary approval.  The proposed class notice and related settlement administration documents objectively provide notice and administration of the proposed settlement, and the proposed deadlines are fair and reasonable.

## II.     NATURE OF THE CASE

### A.     The Allegations In This Case

#### 1.     Expense Reimbursement

Stokes worked for CleanSource, Inc. ("CSI") and IBI from 2002 until 2012.  On November 1, 2010, Stokes, became an employee of Defendant IBI, which purchased substantially all of CSI's assets and started its CleanSource operating division.  After that date, Stokes worked for the CleanSource operating division of IBI.  On and after that date, other CSI employees became IBI employees as well.[2]

When he worked at CSI and IBI, Stokes held the position of account manager.  His job was to work outside the office to sell janitorial supplies.  To do this, Stokes, and other similarly situated account managers, drove their personal cars to client locations to sell and deliver products and prospect for new accounts.[3]  Stokes alleges that IBI did not reimburse him, and those similarly situated, for all expenses

---

[1] Declaration of Robin G. Workman In Support of Plaintiff's Motion for Preliminary Approval ("Workman Decl."), Ex. A.
[2] Declaration of Cory Stokes In Support Of Motion for Preliminary Approval ("Stokes Decl."), ¶ 2.
[3] Stokes Decl. ¶¶ 2-3.

incurred to do the job, such as reimbursement for all miles driven and cell phone usage, in violation of California Labor Code section 2802.[4]

Stokes alleges that, pursuant to its Commission Program, IBI reimbursed account managers through a lump sum payment based on sales, as opposed to actual expenses incurred. The Program, in the section titled "Account Manager Expense Allowances," explains that "all account managers will receive monthly taxable allowances for business related expenditures," including cellular telephone expenses and travel-related expenses. The Program listed the reimbursement amounts, stating that they are based on gross profits per month achieved in the prior calendar year and that "these payments, along with our Commission Program, are all-inclusive for sales compensation." Pursuant to the Program, if an account manager had sales of "0-$30K" per month, for example, he would receive an expense allowance of $350 per month: $50 for phone expenses; $50 for entertainment; and, $250 for an expense allowance that included car expenses.[5] Given the mileage driven, Stokes alleges that the set amount was insufficient to cover all expenses incurred.

Through discovery, Stokes learned that after he filed this action, in July of 2013, IBI changed its policy for account managers' mileage reimbursement. Account managers now submit their mileage each month. IBI now calculates reimbursement by multiplying the miles driven by the current IRS rate.[6] IBI denies that it has ever failed to fully reimburse Stokes or any other employee for business-related expenses.

### 2. Deductions

Defendant paid account managers on a commission basis. Stokes also alleges that IBI improperly deducted account managers' commissions for its cost of doing business, such as if a client paid with a credit card, and did not set forth these deductions on wage statements as required by Labor Code section 226(a)(4).[7] The Commission Program explains the deductions IBI took from commissions,[8] which are also set forth on the account managers' monthly commission statements under the section titled "deductions."[9] IBI denies that it ever made unlawful deductions from the earned wages of Plaintiff or any other employee.

### B. Procedural History

Plaintiff filed a putative class action on August 15, 2012, against both IBI and CSI in the Superior

---

[4] Workman Decl., Ex. C, Plaintiff's Amended Complaint, at ¶¶ 6, 15-18 & 21.
[5] Stokes Decl. Ex. A, at p. 3.
[6] Workman Decl. ¶¶ 6 & 10, Ex. F.
[7] Stokes Decl. Ex. A, see, e.g., ¶ U.
[8] Id.
[9] Stokes Decl. Ex. C.

Court of California, County of San Francisco, Case No. CGC-12-523274, alleging causes of action on behalf of a proposed class of account managers for: (1) Violation of California Labor Code section 2802 for the failure to reimburse work-related expenses; and, (2) Violation of the California Unfair Competition Law ("UCL"), California Business and Professions Code section 17200, et seq., based on alleged violations of Labor Code sections 221, 226, 2698 et seq., and 2802, premised primarily on the alleged unlawful deductions from wages, inaccurate wage statements, and unreimbursed business-related expenses.[10] In its discovery responses, IBI identified 75 persons as being employed as an account manager from August 2008 to the date of the response (Aug. 2013).[11] On September 17, 2012, Stokes filed a first amended complaint, adding a third claim for civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), Labor Code section 2699, et seq. The PAGA claim is based on alleged violations of Labor Code sections 201-204, 221, 226, 1174, 2802 and 2699.5, and the applicable Wage Orders.[12]

On October 26, 2012, IBI removed the action to this Court.[13] On February 13, 2013, the Court denied Plaintiff's motion to remand. In connection with that order, on March 26, 2013, the Court entered an order dismissing CSI.[14] Following receipt of the Court's order, on April 16, 2013, Stokes filed another putative class action Complaint against CSI and CSE Holdings, Inc. (collectively, "CleanSource") in the San Francisco County Superior Court, Case No. CGC-13-530640, entitled Cory Stokes v. CSE Holdings, Inc., CleanSource, Inc., et al., and an amended complaint therein on October 15, 2013.[15]

### C. March 12, 2014, Mediation

The parties aggressively litigated this action. In addition to the remand motion, the law and motion practice in this case included: a motion to dismiss and/or strike the first amended complaint; pending cross-motions related to the enforceability of an arbitration agreement imposed by IBI during the litigation and its impact on the viability of a certifiable class; a pending motion for partial judgment on the pleadings; and, numerous litigated and pending discovery disputes. The parties also engaged in significant written discovery, including eleven sets of inspection demands served by Plaintiff, six sets of interrogatories served by Plaintiff, the deposition of Defendant's Rule 30(b)(6) witness by Plaintiff, sixty-three inspection

---

[10] Workman Decl. Ex, B.
[11] Workman Decl. Ex. E, Interline's 3rd Supplemental Response to Plaintiff's Interrogatory no. 1.
[12] Workman Decl. Ex. C.
[13] Workman Decl., ¶ 3.
[14] Workman Decl., ¶ 3, Ex. D.
[15] Workman Decl., ¶ 3.

demands served by IBI, multiple sets of interrogatories served by Interline, and over 1,000+ requests for admissions served by IBI. This discovery generated the exchange of numerous documents, 1,500+ documents produced by IBI and 3,600+ documents produced by Stokes. The parties also exchanged confidential materials to facilitate preparation for the mediation.[16]

As the extensive work on the case allowed the parties to fully understand the claims presented and the defenses thereto, on March 12, 2014, the parties and CleanSource participated in a mediation with the highly regarded class action mediator, David Rotman, in San Francisco, California. During that mediation, IBI and Stokes agreed to enter into this Settlement to resolve all disputes between them. There was no resolution of the claims alleged against CleanSource in the state court action.[17]

### D. Terms of the Settlement

Pursuant to the agreed terms, the Maximum Settlement Amount that IBI is obligated to pay under the Settlement is One Million Dollars ($1 million). This sum includes settlement of the claims of the approximately 75 proposed class members, as well as attorneys' fees and costs, the incentive award for Plaintiff as the proposed class representative, a payment to the LWDA pursuant to PAGA, and the cost of class notice and claims administration.[18] Some pertinent terms are as follows:

Once IBI makes a deposit of up to the Maximum Settlement Amount into the Gross Settlement Fund in accordance with the Settlement, the Claims Administrator shall deduct and distribute from the Gross Settlement Fund the following:

    1.    The LWDA Distribution, in the amount of $10,000;[19]

    2.    The Class Representative Enhancement, not to exceed $25,000;[20]

    3.    The Claims Administration Charges, not to exceed $10,000;[21] and,

    4.    The Class Counsel Attorneys' Fees, not to exceed 25% of the Maximum Settlement Amount, or $250,000, and Costs, not to exceed $30,000.[22]

After deducting and distributing from the Gross Settlement Fund the items described above, the Claims Administrator will distribute the remaining Gross Settlement Fund as follows:

---

[16] Workman Decl. ¶ 11.
[17] Workman Decl. ¶ 8.
[18] Workman Decl., Section III, ¶ B, Workman Decl., Ex. A.
[19] Workman Decl., Section II, ¶ W, Workman Decl., Ex. A.
[20] Workman Decl., Section III, ¶ D, Workman Decl., Ex. A.
[21] Workman Decl., Section III, ¶ G, Workman Decl., Ex. A.
[22] Workman Decl., Section III, ¶ C, Workman Decl., Ex. A.

1.      Within 30 days after the Date of Preliminary Approval, the Claims Administrator shall mail the Claim Form together with the Notice of Settlement to each Class Member;[23]

2.      Class Members shall have 45 days to submit a claim form, opt out of the Settlement, or object to the Settlement;[24]

3.      Each Class Member who timely submits a properly completed Claim Form will have his or her final Net Pro Rata Distribution calculated by the Claims Administrator by multiplying the Class Claimant's Pro Rata Ratio by the Net Settlement Amount.[25]

## III.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY APPROVAL

When parties reach a proposed classwide settlement, they must submit the settlement to the court for approval. Fed. R. Civ. P. 23(e); 2 H. Newberg & A. Conte, Newberg on Class Actions (4th Ed. 2002) ("Newberg") at § 11.41, p.11-89. Preliminary approval is the first of three steps that comprise the approval procedure for class action settlements. The second step is the dissemination of notice of the settlement to class members. The third step is a final settlement approval hearing, at which the parties may present evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement and the Court may hear class members regarding the settlement. See, Beck-Ellman v. Kaz USA, Inc., 2013 U.S. Dist. LEXIS 60182, *15 (S.D. Cal. Jan. 7, 2013); Newberg, at p. 11-89; Manual for Complex Litigation, Fourth, § 21.632-21.635 (2013).

The question at preliminary approval of a proposed class action settlement is whether the proposed settlement is "within the range of possible approval." Manual for Complex Litigation, Fourth § 21.662 at p. 555; Beck-Ellman, 2013 U.S. Dist. LEXIS 60182 at *14-15. As explained by the Ninth Circuit in Linney v. Cellular Alaska P'ship, 151 F.3d 1234 (9th Cir. 1998), a settlement necessarily involves compromise, emphasizing: "'the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" (Quoting Officers of Justice v. Civil Serv. Comm'n, 688 F.2d 615, 624 (9th Cir. 1992)).

When determining if a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy favoring settlement, particularly where complex class litigation is concerned." Beck-Ellman, 2013 U.S. Dist. LEXIS 60182, *14-15 (quoting In re Heritage Bond Litigation, 2005 U.S. Dist. LEXIS 13555, *2 (C.D. Cal. June 10, 2005)); see also Newberg at § 11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). As Beck-Ellman explained: "The Ninth

---

[23] Workman Decl., Section III, ¶ F, 2, Workman Decl., Ex. A.
[24] Workman Decl., Section II, ¶¶ B, BB, CC, Workman Decl., Ex. A.
[25] Workman Decl., Section II, ¶¶ FF, GG, Workman Decl., Ex. A.

Circuit favors deference to the 'private consensual decision of the [settling] parties,' particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party—in this instance, a private mediator…" Id. at 16 (quoting Rodriquez v. West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009)).

### A. The Role Of The Court In Preliminary Approval Of A Class Action Settlement

The approval of a proposed settlement of a class action suit is a matter within the broad discretion of the district court. Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003). Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is "fair, reasonable and adequate;" "[r]ather, at the preliminary approval stage the Court need only review the parties' proposed settlement to determine whether it is within the permissible 'range of possible judicial approval' and, thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate." Beck-Ellman, 2013 U.S. Dist. LEXIS 60182 at *15 (quoting Newberg at § 11:25).

When considering the fair, reasonable, and adequate question, the reality is that "parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value.'" Beck-Ellman, 2013 U.S. Dist. LEXIS 60182 at *16 (quoting Rodriquez, 563 F.3d at 965). Engaging in this analysis, courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. Kirkorian v. Borelli, 695 F. Supp. 446, 451 (N.D. Cal. 1988). Indeed, the court in National Rural Telecoms. Coop. v. DirectTV, Inc., et al., 221 F.R.D. 523, 528 (C.D. Cal. 2004), emphasized "'[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."

Ultimately, however, the courts recognize that the district court's determination is nothing more than an "amalgam of delicate balancing, gross approximations and rough justice." City of Detroit v. Grinnell Corp., 495 F.2d 448, 468 (2d Cir. 1974). As the court in Shames v. Hertz Corp., 2012 U.S. Dist. LEXIS 158577, *14 (S.D. Cal. Nov. 5, 2012)(internal quotation omitted) explained: "'The question [the Court] address[es] is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate, and free from collusion.'"

### B. Factors For The Court To Consider In Granting Preliminary Approval

The court considers a number of factors in evaluating a settlement for purposes of preliminary approval, including:  the strength of plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout the trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, and the experience and views of counsel.  No one factor is determinative.  If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and if the settlement falls within the range of possible approval, then the court should direct that the Claims Administrator give notice to the class members of a formal fairness hearing, at which all may present evidence regarding the settlement.
Newberg, § 11:43, p. 120; Beck-Ellman, 2013 U.S. Dist. LEXIS at *14 (citing Staton, 327 F.3d at 959).

### 1.   The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations

This Settlement is the result of extensive and hard-fought negotiations.  IBI denies all of the contentions alleged in this action.  IBI asserts many defenses thereto, and denies any wrongdoing or legal liability arising out of the conduct alleged.  IBI concluded that this action may be settled in the manner and upon the terms and conditions in the Settlement to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.

Settlement negotiations took place with David Rotman, one of the preeminent mediators of wage and hour class actions.  Counsel for the parties, after settlement negotiations lasting well into the night, reached an agreement based on Mr. Rotman's expertise as a mediator and the uncertainties of protracted litigation.[26]  Plaintiff and Class Counsel believe that IBI's agreement to pay a maximum of $1 million to resolve class members' claims is fair, reasonable, and adequate.

Class Counsel conducted a thorough investigation into the facts of this action, including an extensive review of documents and data, obtained through formal and informal discovery.[27]  Based on the review of documents, information, deposition testimony, and data and their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant

---

[26] Workman Decl., ¶ 8.
[27] Workman Decl., ¶ 11.

delay, defenses asserted by IBI, and numerous potential appellate issues. IBI and its counsel also agree that the Settlement is fair and in the best interest of the class members.

Here, the negotiations were hard-fought and aggressive with capable advocacy on both sides. Accordingly, "[t]here is likewise every reason to conclude that settlement negotiations were vigorously conducted at arms' length and without any suggestion of undue influence." In re Wash. Public Power Supply System Sec. Litig., 720 F. Supp. 1379, 1392 (D. Ariz. 1989).

<blockquote>

**2.** **The Proposed Settlement Is Within The Range Of Reasonableness And Has No Obvious Deficiencies**
</blockquote>

The proposed Settlement has no "obvious deficiencies" and is within the range of possible approval. All class members will receive an opportunity to participate in the Settlement and receive payment. As stated, Plaintiff propounded numerous sets of inspection demands and interrogatories on IBI.[28] In response to these requests and in furtherance to facilitate the mediation process, Interline produced class member records and information pertaining to the claims presented including information regarding any potential deductions taken from commissions as well as compensation paid for miles driven. Defendant also produced information regarding job descriptions, employment related documents, period of employment, rate of pay, and other work related records.[29]

Plaintiff retained a wage and hour damage calculation expert, Class Action Damage Analysis ("CADA"), to complete calculations to determine appropriate compensation to the proposed class members for reimbursement for alleged work-related expenses and for alleged deductions taken from commissions earned by the class members. As outlined above, IBI became the employer of the proposed class members in November, 2010. For the additional money owed to the class for mileage expenses, using a base of an additional $500 owed for each month worked, CADA's damage analysis reflected additional amounts due to the class for the time period of November 1, 2010 to the date of the mediation to be $1,067,500. Using a base figure of an additional $50 per month owed to the class members for the use of their personal cell phones for work for the same time period, the additional amount owed to the class for the use of their personal cell phones is $106,750. For the deductions that Plaintiff alleges were taken from commissions owed for the same time period, the damages would total $134,680.[30] As a result of CADA's damage

---

[28] Workman Decl., ¶ 11, Exs. E, G-BB.
[29] Workman Decl., ¶ 11.
[30] Workman Decl., ¶ 14.

analysis, Plaintiff alleges that Defendant was subject to claims totaling $1,308,930.[31] The settlement amount, $1 million, reflects almost full compensation to the class for unpaid mileage reimbursement. Even if one considers all claims, the settlement amount reflects 76% of the total amount alleged.[32]

In Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 27, 2007), the court approved a settlement of an action claiming unpaid overtime wages where the settlement amount constituted only 25 to 35% of the estimated actual loss to the class. Id. at *28. As the court in Shames, 2012 U.S. Dist. LEXIS 158577 at *6, (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 454 (2000)(court approved as fair and adequate a settlement constituting one-sixth of the potential recovery), explained: "While settlement amounts that are close to the plaintiff's estimate of damages provide strong support for approval of the settlement, settlement offers that constitute only a fraction of the potential recovery do not preclude a court from finding that the settlement offer is fair." Here, the settlement consideration constitutes a substantially larger percentage of the estimated actual loss to the class than in either Glass or Mego. This Settlement therefore is entitled to preliminary approval.

When both sides face significant uncertainty, the attendant risks favor settlement. Hanlon v. Chrysler Corp., 150 F.3d 1011 at 1026 (9th Cir. Cal. 1998). Here, IBI contends that at all times it reimbursed class members for all expenses incurred to do their job as required by Labor Code section 2802 and that it did not take deductions from commissions earned and, therefore, no violations of Labor Code section 226 occurred and it owed the class members no additional compensation. As the Glass court held, when the parties faced uncertainties similar to those here:

> In light of the above-referenced uncertainty in the law, the risk, expense, complexity, and likely duration of further litigation likewise favors the settlement. Regardless of how this Court might have ruled on the merits of the legal issues, the losing party likely would have appealed, and the parties would have faced the expense and uncertainty of litigating an appeal. The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement. See also Mego, 213 F.3d at 458.

Here, the risk of further litigation militates in favor of approving the Settlement.

### 3. The Settlement Does Not Improperly Grant Preferential Treatment To The Class Representative or Segments Of The Class

The relief provided in the Settlement will benefit all proposed class members equally because the payments are based on periods of employment. The settlement does not improperly grant preferential

---

[31] Workman Decl. ¶ 14.
[32] Workman Decl. ¶ 14.

treatment to the Class Representative or any individual segments of the proposed class. The Claims Administrator will determine each class member's payment as follows: Each Class Member who timely submits a Claim Form will have his or her final Net Pro Rata Distribution calculated by the Claims Administrator by multiplying the Class Claimant's Pro Rata Ratio by the Net Settlement Amount. "Pro Rata Ratio" means, for each Class Member, the Class Member's Total Months Employed during the Class Period divided by the sum of Total Months Employed by all Class Members during the Class Period.[33]

The fact that Class Representative Stokes will apply to the Court for a named plaintiff enhancement of $25,000 does not change this analysis. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." See Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001)(quoting In Re Southern Ohio Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); see also, Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 300 (N.D. Cal. 1995).

Plaintiff Stokes provided invaluable assistance in the prosecution of this case, obtained and provided documents, responded to voluminous discovery requests, and timely responded to continual inquiries from Class Counsel.[34] In Glass, the district court awarded each class representative in an overtime wages class action a service award of $25,000. 2007 U.S. Dist. LEXIS at *50-52.

**4.    The Stage Of The Proceedings Is Sufficiently Advanced To Permit Preliminary Approval Of The Settlement**

The stage of the proceedings at which the parties reached this Settlement also weighs in favor of preliminary approval. As outlined above, Class Counsel conducted a thorough investigation into the facts of the claims alleged. The agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that they could obtain through further litigation.[35] Given the activity in this case, there can be no doubt that counsel for both parties possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.[36] In Glass, where the court granted final approval of an overtime wage and meal period action although the

---

[33] Workman Decl., Section II, ¶¶ FF, GG, Workman Decl., Ex. A.
[34] Workman Decl., ¶ 15.
[35] Workman Decl., ¶ 16.
[36] Workman Decl., ¶ 17.

parties conducted no formal discovery prior to the settlement, the court explained:

> Here, no formal discovery took place prior to settlement. As the Ninth Circuit has observed, however, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."

2007 U.S. Dist. LEXIS at *14. See Mego, 213 F.3d at 459. Class Counsel was in a much stronger position to evaluate the fairness of this Settlement than in Glass because they conducted significant formal and informal discovery.

## VI. THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES

The proposed settlement meets the requirements for class certification under F.R.C.P. 23(b)(2). Therefore, the Court may approve the settlement class as defined in the Settlement. Plaintiff requests that this Court conditionally certify a class for settlement purposes only that consists of: "[a]ll account managers and similar employees who were paid sales commissions and/or used their personal automobiles for business-related purposes, and who were directly hired and employed by Defendant IBI's unincorporated CleanSource operating division in California from August 15, 2008 through December 31, 2013, who have not previously entered into an agreement with Defendant releasing their Released Claims."[37]

### A. Rule 23 of the Federal Rules of Civil Procedure Governs

Plaintiff seeks certification of this action for settlement purposes under Rule 23(b)(3). This portion of Rule 23 applies to class actions where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." To maintain a class action under Rule 23(b)(3), Plaintiff must first satisfy the four prerequisites of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. While IBI disputes that Plaintiff can satisfy any of these requirements, the parties agree that, for purposes of settlement only, these requirements are satisfied in this case, and therefore, the Court should certify the proposed settlement class for purposes of settlement.

### B. The Numerosity Requirement Is Satisfied

---

[37] Settlement Agreement ¶ I.F, Workman Decl., Ex. A.

Rule 23(a) merely requires that the class be "so numerous that joinder of all members is impracticable." F.R.C.P. 23(a). "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." EEOC v. Kovacevich "5" Farms, 2007 U.S. Dist. LEXIS 32330, *57 (E.D. Cal. April 18, 2007). In Consolidated Rail Co. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), the court found that "numerosity is presumed at a level of 40 members." The Ninth Circuit observed that the district courts routinely certify classes with fewer than 70 members. Jordan v. County of Los Angeles, 669 F.2d 1311, 1320 n. 10 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982). The settlement class here is composed of approximately 75 persons, which is sufficient.

## C.    Common Questions of Law and Fact Bind the Class

Rule 23(a) does not require that the class members be identically situated. Rather, commonality is established if "there are questions of law or fact common to the class." Courts construe the commonality requirement permissively, and the requirement is satisfied upon a finding of "shared legal issues with divergent factual predicates." Hanlon, 150 F.3d at 1019. Faced with a similar fact pattern, where plaintiffs asserted a failure to reimburse for work related mileage expenses, the Monterrubio v. Best Buy Stores, 291 F.R.D. 443, 449 (E.D. Cal. 2013), court held that "[t]hese factual and legal questions make clear that the evidentiary and legal arguments necessary to prosecute the instant claims are nearly identical as to all class members. Thus, the class meets the commonality requirement." It is because this type of case presents common issues that the courts routinely certify expense reimbursement cases. See, e.g., Estrada v. FedEx Ground Package System, Inc., 154 Cal. App. 4th 1 (2007); Schultz v. Qualxserv, LLC, 2012 U.S. Dist. LEXIS 58561 (S.D. Cal. Apr. 26, 2012); Dalton v. Lee Publications, Inc., 270 F.R.D. 555 (S.D. Cal. 2010); Stuart v. Radioshack Corp., 2009 U.S. Dist. LEXIS 12337 (N.D. Cal. Feb. 5, 2009); Hopkins, et al. v. Stryker Sales Corp., 2012 U.S. Dist. LEXIS 67101 (N.D. Cal. May 14, 2012).

The common questions of law and fact that Plaintiff alleges here, specifically the question of whether IBI failed to compensate account managers for all expenses incurred to do their jobs and improperly took deductions from commissions owed to account managers, meet the commonality standards. IBI will not oppose a commonality finding for settlement purposes.

## D.    The Claims of the Plaintiff Are Typical of the Class

The typicality requirement of Rule 23(a) requires the plaintiff to demonstrate that the members of

the class have claims similar to those of the named plaintiff. As the Ninth Circuit explained in Hanlon: "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." 150 F.3d at 1020. Typicality "does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members," Staton, 327 F.3d at 957, but rather it means that the claims "share a common issue of law or fact… and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1175 (9th Cir. 1990).

Here, Plaintiff satisfies the typicality requirement. Plaintiff alleges that he, like every other class member, was an IBI employee who incurred expenses to perform his job, including those to drive his personal car for work. IBI allegedly reimbursed Plaintiff under the same lump sum system as all other account managers. In like vein, IBI allegedly operated under the same Commission Plan, setting forth the deductions taken for Plaintiff, as well as all other account managers. Thus, the claims of both Plaintiff and the class members arise from the same alleged course of conduct by IBI, and are based on the same legal theories. IBI will not oppose a finding of typicality for purposes of this settlement only.

**E.** **The Class Representative Has Fairly and Adequately Protected the Interests of the Proposed Class**

In Hanlon, the court identified two issues for determining adequacy: (1) whether the named plaintiff and his or her counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." 150 F.3d at 1020 (citing Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978)). Neither Plaintiff nor Class Counsel have any conflicts of interest with any of the proposed class members.[38] The procedural history, as reflected in the docket, establishes that Plaintiff and Class Counsel have "vigorously" prosecuted this case. Perhaps recognizing the hard fought affair this case would be, Plaintiff retained competent counsel who has extensive experience in wage and hour class actions throughout California.[39] Plaintiff is well aware of his duty as a class representative and has actively participated in the prosecution of this case to date to assist the prosecution.[40] IBI does not oppose an adequacy finding for purposes of this settlement

---

[38] Workman Decl., ¶ 18.
[39] Workman Decl., ¶¶ 19-20.
[40] Workman Decl., ¶ 18; Stokes Decl. ¶ 5.

only.

**F.     The Settlement Satisfies the Additional Requirements of Rule 23**

As the settlement satisfies Rule 23(a), the Court then must look to Rule 23(b)(3) to determine whether a class should be maintained.  Under Rule 23(b)(3), a party may maintain a class action if two basic conditions are met:  (1) common questions must predominate over individual issues; and, (2) the class action must be superior to other available methods for the fair and efficient adjudication of the controversy.

**1.     The Predominance Requirement Is Met**

Rule 23(b)(3) provides that a party may maintain a class action if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members."  The court must determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation.  <u>Hanlon</u>, 150 F.3d at 1022.  The requirement is satisfied if plaintiff establishes that a "common nucleus of facts and potential legal remedies" dominates the litigation.  <u>Id.</u>

Here, the "common nucleus of facts" arises from IBI's practices that applied uniformly to all the proposed class members throughout the pertinent time period.  It is these practices that allegedly deprived Plaintiff and class members of reimbursement for work expenses and generated deductions from earned commissions.  While the factual underpinnings for each proposed class member's potential claims may have some minor differences, common issues still prevail.  <u>See</u> <u>Blackie v. Barrack</u>, 524 F.2d 891, 905 (9th Cir. 1975).  IBI will not dispute the predominance requirement for settlement purposes.

**2.     The Superiority Requirement Is Met**

To certify a class, the Court must also determine "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Rule 23(b)(3).  "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."  <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996).  When parties agree to a proposed settlement, "the desirability of concentrating the litigation in one forum is obvious."  <u>Monterrubio</u>, 291 F.R.D. at 452.  Here, a class action is the superior method for adjudication of the class member's claims.  IBI will not object to a superiority finding for settlement purposes only.

**VII.     THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE**

Class notice must (1) be "reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," and (2) must satisfy the content requirements of Rule 23(c)(2)(B).  <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950).  Rule 23(c)(2)(B) requires the notice to state: (1) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members.  Courts approve notice by mail as long as the notice content sent to class members is accurate, objective, and understandable. <u>Mullane</u>, at 314.

The proposed Class Notice and Claim Form are attached as Exs B-C to the Settlement Agreement.[41] The proposed Class Notice meets the requirements of notice, accuracy, objectivity, and clarity.

## VIII.   <u>THE COURT SHOULD SET THE FOLLOWING SETTLEMENT ADMINISTRATION DEADLINES</u>

The parties propose and request the Court to approve the following deadlines in anticipation of the September 24, 2014, filing deadline for final approval, and October 29, 2014, hearing date for final approval as set by the Court's June 18, 2014, Preliminary Approval Order:

| | | |
|---|---|---|
| 1. | Dahl Administration Mailing Notice Deadline: | July 18, 2014 |
| 2. | Request for Exclusion Mailing Deadline: | September 3, 2014 |
| 3. | Claim Form Mailing Deadline: | September 3, 2014 |
| 4. | Objection Service Deadline: | September 3, 2014 |

## IX.   <u>CONCLUSION</u>

Plaintiff requests that the Court grant preliminary approval of the proposed settlement, certify the Class for settlement purposes, appoint Plaintiff Cory Stokes as Class Representative and Workman Law Firm, PC as class counsel, approve the class notice and related settlement administration documents, and settlement administration deadlines, and appoint Dahl Administration, LLC as the third party administrator.

DATE:  May 13, 2014                                    WORKMAN LAW FIRM, PC
                                                  By:   <u>/s/ Robin G. Workman  </u>
                                                        Robin G. Workman
                                                        Attorneys for Plaintiff Cory Stokes

---

[41] Workman Decl., Ex. B.