UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY STOKES,<br><br>          Plaintiff,<br><br>    v.<br><br>INTERLINE BRANDS, INC.,<br><br>          Defendant. | Case No. 12-cv-05527-JD<br><br>**AMENDED ORDER DENYING PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Re: Dkt. No. 79 |

This order withdraws in its entirety and replaces the order previously entered at Dkt. No. 87 in this case. The Court makes this amendment to correct a citation error at page 8 of the original slip opinion. The correction does not change in any way the Court's findings or conclusions.

**INTRODUCTION**

As this Court has held, class actions "are an engine of justice" in our federal system. *Kakani v. Oracle Corp.*, No. C 06-06493-WHA, 2007 WL 1793774 at *1 (N.D. Cal. June 19, 2007). Our circuit has declared a strong judicial policy of favoring class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). But the role of the Court is not to rubber-stamp proposed class settlements simply because counsel for the parties say it is a good result. The Court is required to review the proposed settlement to ensure that absent class members are being treated fairly and reasonably, and are not victims of a deal between attorneys for the parties to cut and run. That review is particularly critical when, as here, a proposed settlement has been reached before a class has been certified. In this context, "a higher standard of fairness" applies due to the "dangers of collusion between class counsel and the defendants, as well as the need for additional protections when the settlement is not negotiated by a court

1  designated class representative." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

2      The proposed settlement here has too many red flags and unanswered questions to be
3  approved. The release imposed on class members is overbroad and gives the defendant a windfall
4  beyond the scope of the claims in the complaint. The release also purports to settle claims under
5  the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, in a way that is not permitted by that
6  statute. The potential payments to the class have been steeply discounted without any explanation
7  other than unspecified "litigation risks." And the parties agreed to a fixed claims limit of $1
8  million from which plaintiff proposes to deduct substantial attorney's fees and a bloated
9  "enhancement" payment to the named plaintiff before funds are made available to the class. They
10 also agreed to reversion of unclaimed funds to the defendant. On top of that, the proposed notice
11 to class members fails to provide clear and adequate notice of key terms in the settlement
12 agreement. Taken as a whole, these factors add up to a suspect deal that the parties have failed to
13 demonstrate is fair, adequate and reasonable for absent class members.

14     The Court denies preliminary approval. The parties have pending motions (Dkt. Nos. 50,
15 59, 61, 74) that will need to be decided and scheduling dates that will need to be changed. The
16 Court sets a case management conference for **August 15, 2014, at 11:00 a.m.**

17     This denial is without prejudice to further attempts to settle this case, but the case schedule
18 will not be delayed substantially. Any future settlement proposals must be consistent with this
19 order.

20     **BACKGROUND**

21     Plaintiff Cory Stokes is a former account manager for CleanSource, a company that
22 became a division of Defendant Interline Brands, Inc. The job involved travel to and
23 communications with existing accounts and potential customers. Mr. Stokes drove his own car
24 and used his personal cell phone for work. Dkt. No. 79 at 1-2. The gist of the complaint is that
25 Interline failed to reimburse him and a putative class of account managers for work-related
26 mileage and cell phone use. Dkt. No. 1, Ex. E. Mr. Stokes also alleges that Interline made
27 improper deductions from account managers' commissions to cover business costs -- including
28 deductions when clients paid by credit cards -- and did not list those deductions on wage

1  statements. *Id*. The Amended Complaint states claims for violations of California Labor Code §§
2  2802 and 2698 and California Business & Professions Code § 17200. *Id*. The Amended
3  Complaint does not mention the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"),
4  and no claims are made for any wages, commissions, reimbursements or other compensation aside
5  from the mileage and cell phone reimbursements, and the allegedly unlawful deductions and
6  inaccurate wage statements.

The parties reached a proposed settlement in a mediation. The key terms are:

(1) The proposed settlement class consists of approximately 75 account managers hired by Interline's CleanSource division in California from August 18, 2008 through the Date of Preliminary Approval. Dkt. No. 80 at 4; Dkt. No. 80-1 at 3.

(2) The settlement agreement fixes a "Gross Settlement Fund" of $1 million to cover every potential claim and expense. Immediately upon deposit of this amount, the administrator will deduct $325,000 to pay for: (1) up to $250,000 in attorneys' fees and $30,000 in costs to plaintiff's counsel; (2) a $25,000 "enhancement" payment to Mr. Stokes; (3) a $10,000 distribution to the California Labor & Workforce Development Agency in full settlement of all claims under the California Labor Code Private Attorneys General Act of 2004; and (4) $10,000 in claim administration fees. Dkt. No. 80 at 5. That reduces the "Net Settlement Amount" available to the class members to $675,000. *See* Dkt. No. 80-1 at 5.

Plaintiff states that a class action damages analysis estimated that $1,308,930 is due to the class, without adding in legal fees or costs. Dkt. No. 80 at 6. Thus, the proposed settlement affords the class approximately 51% of the lost reimbursements.

The agreement provides "at a minimum, 50% of the Gross Settlement Fund will be funded and paid . . ." Dkt. No. 80-1 at 8. This $500,000 minimum settlement payment is deemed the "Minimum Funding Commitment." *Id.*

(3) The settlement agreement states that "[a]ny portion of the Net Settlement Amount that is not paid to class members reverts to Interline." *Id*. at 20. Class counsel contends that the Minimum Funding Commitment decreases the amount that could potentially revert to Interline. But the provision governing the reversion does not limit what funds can revert. It states that "any

3

portion . . . not claimed or distributed" will revert to Interline. *Id.* Further, the agreement does not provide how unclaimed funds will be disbursed if the Minimum Funding Commitment is fulfilled, but some funds remain unclaimed.

(4) The released claims are defined to include "all claims, demands, rights, liabilities, and causes of action that were, are or might have been asserted against" Interline "arising out of, relating to, or in connection with any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act which are or could be the basis of claims that" Interline "failed to timely, properly or otherwise pay any type of wages or other compensation (including without limitation commission wages) to which Plaintiff and/or Class Members may claim to be entitled, failed to fully or timely or properly reimburse Plaintiff and/or Class Members for any business-related expenses, failed to timely or properly or otherwise provide accurate wage statements to Plaintiff and/or Class Members, failed to keep records properly concerning wages earned by or paid to Plaintiff and/or Class Members, and/or failed to properly pay any wages, at any time on or before" final settlement approval. Dkt. 80-1 at 6-7.

The released claims also include "any claims for alleged violations of the federal Fair Labor Standards Act ("FLSA")." *Id*. at 7. In addition, Mr. Stokes has his own release of all claims relating to his employment at Interline. *Id*.

The settlement agreement provides in another section that the released claims include "known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, which now exist . . . or coming into existence in the future." *Id*. at 21.

(5) Notice of settlement and the claims process will be made by one first class mailing with "reasonable" follow-up for any notices and forms returned as undeliverable. *Id.* at 16. Class members are given 45 days to file a claim. *Id*. at 6, 16. They also have 45 days to object. *Id*. at 6.

(6) The class is structured as an "opt-out" only class that requires members to affirmatively express the desire not to be bound by the agreement. *Id.* at 17. Members who do not wish to participate have 45 days from mailing of notice to "indicate in writing," "sign the request for exclusion" and "postmark and mail" the election to opt out to the administrator. *Id*. Class members who fail to exclude themselves within 45 days are bound by the release of claims and a

1  covenant not to sue on those claims. *Id*. at 20-21. No exception is provided for class members for
2  whom notice is returned as undeliverable or who otherwise receive no compensation. Every class
3  member who does not follow the opt out rules will be bound, even those without notice of the
4  settlement. *Id* at 16-18. In addition, no provision is made for any kind of opt-in for FLSA
5  collective action purposes.

6  Plaintiff also presented a "Notice of Proposed Settlement" to the Court as part of the
7  preliminary approval request. Dkt. No. 79-11, Ex. A. This notice makes no effort to describe the
8  scope of the releases provided for in the settlement agreement, and never mentions the FLSA as a
9  released claim. *See id.*

## DISCUSSION

The Court's primary concern in reviewing a class settlement agreement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). To that important end, the Court will give preliminary approval of a class settlement and notice when (1) "the proposed settlement appears to be the product of serious, informed, noncollusive negotiations," (2) "has no obvious deficiencies," (3) "does not improperly grant preferential treatment to class representatives or segments of the class," and (4) it "falls with the range of possible approval . . . ." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (citation omitted); *Tijero v. Aaron Bros., Inc.*, No. C 10-01089-SBA, 2013 WL 60464, at *7 (N.D. Cal. Jan. 2, 2013) (same).

Obvious deficiencies sink this proposed settlement. Several serious deficiencies are apparent: the excessive scope of the release, an inadequate explanation for the steep discount of the class members' claims, the reversion of unclaimed funds to Interline, the bloated "enhancement" to the named plaintiff, and the failure to describe the release adequately in the proposed notice form.

### I.     Scope of the Released Claims

The scope of the releases improperly exceeds the claims stated in the complaint. While a release need not slavishly echo the claims in the complaint, it must appropriately track and not

5

exceed them. *Tijero,* 2013 WL 60464 at *9; *see also Custom LED, LLC v. eBay, Inc.*, Case No. 12-cv-00350-JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013) (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (citations and internal quotation marks omitted).

Here, the release gives away claims far outside plaintiff's allegations. As plaintiff characterized the case in the request for preliminary approval, and as shown in the amended complaint, the claims are about Interline's alleged failure to reimburse class members for mileage and cell phone use, and Interline's alleged failure to account for business expense deductions on wage statements. But the proposed release goes far beyond those discrete claims to release any and all claims for any type of wage, compensation or commission claim, any type of reimbursement claim, and any type of inaccurate wage statement claim -- even if totally unrelated to the specific allegations made by plaintiff. That expansive release, buried in a technical legal document that class members are unlikely even to see let alone get independent legal advice on, is far beyond an appropriate tracking of the claims in the complaint.

The treatment of the FLSA issue is particularly egregious. The complaint says nothing at all about FLSA claims and yet the release purports to give away class members' rights under the statute. That is wholly unacceptable. Even worse, the proposed settlement improperly seeks to compromise FLSA claims in a Rule 23 context. As this court has made clear, FLSA claims cannot be treated within a class action under Rule 23. *Tijero*, 2013 WL 60464 at *8; *Kakani*, 2007 WL 1793774 at * 7. That is because FLSA claims are collective action claims that require an affirmative opt-in by written consent on the part of claimants, whereas Rule 23 -- as expressly structured here -- operates on an opt-out basis. *Tijero*, 2013 WL 60464 at *8.

On top of these problems, the Court is very concerned about the intent to bind class members to the overbroad release even if they do not receive notice or a payment. That tactic raises serious denial of due process issues. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999)

6

1  (absent class members must receive notice and opportunity to opt out before being bound);

2  *Kakani*, 2007 WL 1793774 at *2-3 (same); *Lounibos v. Keypoint Gov't Solutions Inc.*, Case No.

3  12-cv-00636-JST, 2013 WL 3752965, at *6 (N.D. Cal. July 12, 2013) (same).

The proposed agreement is also at times incomprehensible about the scope of released claims. The agreement repeatedly limits class members to those "who have not previously entered into an agreement with Defendant releasing their Released Claims . . . ." Dkt. No. 80-1 at 3, 7. No other agreements have been presented to the Court, and the Court is mystified about the meaning, scope and intent of the parties' language here. In a future request for approval, should there be one, the parties need to better explain these other releases and their effects before this Court can find that scope of the released claims in the settlement agreement is fair and reasonable.

## II. Recovery Discount

Another defect is the failure to explain why the class is taking a substantial hit on potential recovery, and why a fund amounting to only approximately 51% of the lost reimbursements is a reasonable outcome. *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080 (settlement amount must fall within the range of the reasonable determined by "plaintiffs' expected recovery balanced against the value of the settlement offer.").

In this case, there should be little uncertainty about the amount due to the class. Records documenting cell phone usage ought to be readily available, and the wage statements evidencing improper accounting should be equally at hand. Mileage estimates may be more complicated but by no means impossible to reasonably determine. Plaintiff's counsel submitted a declaration that describes a class action damages expert analysis calculating lost reimbursements to be $1,308,930, which presumably reflects specific loss evidence.[1]

Counsel utterly fails to explain why, in the face of a reasonable degree of confidence in the

---

[1] Counsel did not submit the actual class action damage analysis. The representations in counsel's declarations are not sufficient for this Court to find that the proposed settlement falls within the range of possible approval. *See Kakani*, 2007 WL 1793774 at *7 (discussing that the Court requested the expert damages report to justify the 87.7% discount in settlement versus predicted recovery, but "[w]hat was submitted was not a sworn expert report but unsworn spreadsheets prepared by counsel" and counsel's conclusory belief that settlement was "imminently reasonable"). If a future request for settlement approval is made, the Court expects to see the damages calculations in detail.

1 losses sustained by the class members, the settlement fund cuts off almost 50 cents on the dollar in
2 recovery. The motion papers say nothing more than "litigation risks" and counsel at the motion
3 hearing did not offer any other explanation. That is not enough. *See Kakani*, 2007 WL 1793774,
4 at *7 (rejecting discount of class recovery because "the record must support the steep discount").
5 While this Court may defer to the judgment of counsel in balancing the risks versus rewards of
6 litigation, the Court is not satisfied with the complete lack of explanation or justification for the
7 steep discount. This problem can be fixed in any future approval request by presenting a more
8 thorough record to support the discount. But until that record is made and tendered to the Court,
9 the discount requested here stands out as unreasonable.

### III. Reversion to Defendant

In addition to this defect, the reversion of unclaimed funds to the Interline is a red flag. Our circuit holds that it is an indication of self-interest on the part of class counsel when "the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Considered collectively with the other obvious deficiencies, the reversion induces considerable concern about the fairness and reasonableness of this agreement.

### IV. Enhancement Payment

Another red flag is the oversized payment requested for the named plaintiff, Mr. Stokes. The settlement contemplates paying Mr. Stokes $25,000 on top of his share of the Net Settlement Amount. No other class member is given that preferential treatment.

The Court agrees with decisions expressing skepticism generally about the propriety of "incentive" or "enhancement" payments to individual plaintiffs. District courts have the discretion to award incentive fees to named class representatives. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). But "if class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) (citing *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *Women's Comm. for Equal Emp't Opportunity*

*v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.")). The "downside" of incentives "is that the payments lend themselves for use as side payments to induce name plaintiffs to go along with sweetheart deals." *See Kakani*, 2007 WL 1793774 at * 1.

The request for a big side payment to Mr. Stokes, taken with the other defects in the proposed settlement, again raises strong concern about the fairness and reasonableness of this agreement. At a minimum, the $25,000 grossly exceeds the benchmark for incentive payments set by this District in cases where the court was inclined to award them. *See, e.g., Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2014 WL 2089938, at *9 (N.D. Cal. May 19, 2014) (noting concern with a $15,000 class representative incentive payment); *Jacobs v. Cal. State Auto. Ass'n Inter–Ins. Bureau*, No. C 07-0362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (rejecting a request for a $25,000 incentive payment as "quite high for this district"). Here, the proposed payment goes gives the appearance that the proposed settlement is paying off the named plaintiff at the expense of the class.

## V. Defects in the Proposed Notice Form

In addition to these issues, the proposed notice to the class has problems. Given the defects in the substantive terms, the Court did not go through the proposed documents to the class with a magnifying lens. But even initial review raises concerns about the propriety and adequacy of the proposed notice. The notice overall is wordy and confusing, and uses technical legal language that is unlikely to be understood by non-lawyers, as well as defined terms that are difficult to cross-reference. *See* Dkt. No. 79-11, Ex. A. It also fails to advise class members about the scope of the claims that will be released. The notice does not spell out what rights and claims class members will give up if they fail to opt out, and fails to mention the FLSA at all. All the notice does is refer class members to the settlement agreement, which is available only if the member reviews the Court file or contacts Class Counsel -- a burdensome requirement that few if any members are likely to pursue. *See id.* at 8. If counsel make another motion for approval, they are advised to ensure that the notices and forms sent to class members are crystal clear and complete.

## CONCLUSION

1    Because the proposed settlement fails to meet a preliminary fairness determination, the
2    Court need not reach plaintiff's request for conditional certification of a class for settlement.  *See*
3    *Kakani*, 2007 WL 1793774; *Fraser v. Asus Computer Int'l*, No. C 12-00652 WHA, 2012 WL
4    6680142 (N.D. Cal. Dec. 21, 2012).  This order is without prejudice to seeking approval of a
5    revised settlement agreement that addresses the foregoing serious shortfalls.  If the parties intend
6    to submit another proposed settlement, they are directed to review the Procedural Guidance for
7    Class Action Settlements, which is available on the Court's website in the Forms & Guidance
8    section.  That guide should be used to improve the next approval request and the proposed notice
9    to the class, with recommendations to provide a website that has links to the notice, motions, and
10   any other important documents in the case, as well as proposed language informing class members
11   how to access the Court's docket.  Case management dates will be set at the conference on August
12   15, 2014.

**IT IS SO ORDERED.**

Dated:  November 10, 2014

_____
JAMES DONATO
United States District Judge